**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

SOLARBRIDGE TECHNOLOGIES, INC., a
Delaware Corporation

               Plaintiff,

    v.

ISAAC OZKAYNAK, an individual,

             DEFENDANT.

)
)
)
)
)
)
)
)
)
)
)
)

Case No. C 10-cv-03769-EJD.

**ORDER GRANTING DEFAULT
JUDGMENT AND PERMANENT
INJUNCTION**

       Before the court is a motion filed by Plaintiff, SolarBridge Technologies.  Plaintiff moves the Court for entry of default judgment and permanent injunction against Defendant, Isaac Ozkaynak.  Defendant has not submitted opposition to the motion, and the time for such opposition has expired. See, Civ. L.R. 7–3(a).

       Having reviewed Plaintiff's Complaint, Brief and the supporting declarations, the Court finds this matter appropriate for decision without oral argument. See, Civil L.R. 7–1(b).  For the reasons that follow, Plaintiff's motion is granted.

## I. BACKGROUND

### A. Procedural History

       Plaintiff filed this suit on August 24, 2010, originally naming John Doe d/b/a "Mark Tatley." On August 27, 2010, the Court granted Plaintiff's motion to conduct third-party discovery in order to determine the true identity of the Doe defendant. On December 17, 2010,

1

1    Plaintiff filed an Amended Complaint ('Complaint') naming Isaac Ozkaynak as the defendant in

2    these proceedings. See, Complaint. Dkt. No. 16.

3         Pursuant to the Hague Convention on Service Abroad, an agent of the Ministry of Justice of

4    Turkey effected service resulting in Defendant being personally served at his place of residence, in

5    Turkey, on April 25, 2011. Defendant did not file an answer or otherwise respond to the

6    Complaint.  On November 14, 2011 the Clerk of the Court entered default against Defendant.

7    Motion for Default Judgment was filed by Plaintiff and a hearing was scheduled for April 20, 2012.

8         Ten days before the hearing for default judgment, the Ninth Circuit in United States v.

9    Nosal, No. 10-10038, 2012 WL 1176119, 2012 U.S. App. LEXIS 7151 (9th Cir. Apr. 10, 2012) (en

10   banc) issued a judgement regarding the Computer Fraud and Abuse Act ("CFAA"). Given that

11   Plaintiff's Complaint and Motion for Default Judgment were predicated on violations of this

12   statute, inter alia, the Court issued an order on April 18, 2012 for supplemental briefing. See, Order

13   for Further Briefing, Dkt. No. 37. On April 30, 2012, such briefing was filed by Plaintiff noting

14   that it had withdrawn its CFAA claim from its Motion for Default Judgment on the basis that

15   further discovery and "factual development" of that claim may be required in light of the Nosal

16   decision.[1] See, Supplemental Briefing, Dkt. No. 38. ¶ 3. Plaintiff, however, has indicated that it

17   maintains the CFAA claim in its Complaint.

18        The Court now turns to the factual allegations upon which the Motion for Default Judgment

19   and Permanent Injunction is based.

20        **B. Factual Allegations**

21        Plaintiff develops solutions that reduce the levelized costs in solar panel installations. See,

22   Complaint, Dkt. No. 16, ¶¶ 2, 9.  Its technology simplifies the installation of solar energy systems,

23   which heightens energy production. Id. ¶ 10.  Plaintiff has expended resources to cultivate this

24   technology and associated trade secrets. Dkt. No. 16, ¶ 11.

25

26

27   [1] Plaintiff noted that at least two of the five misappropriated documents alleged in the Complaint
     are "believed to have been accessed after the Defendant signed his termination certificate on
28   February 5, 2010." See, Supplemental Briefing, Dkt. No. 38, at¶ 3. Plaintiff also withdrew its claim
     under Californian Penal Code Section 502(c).

Case No. C 10-cv-03769-EJD
ORDER GRANTING DEFAULT JUDGMENT AND PERMANENT INJUNCTION

*United States District Court*
*For the Northern District of California*

As part of its regular course of business, Plaintiff hires employees as well as consultants and other third parties. During the course of the relationship with Plaintiff, its employees and consultants may be privy to Plaintiff's confidential and trade secret information that is not available to the public. See Id., Complaint. Dkt. No. 16, ¶ 12. Because of the highly competitive nature of the solar industry and given Plaintiff's need to maintain its competitive position, Plaintiff takes steps to safeguard its confidential information and trade secrets. Id. ¶ 13.

Plaintiff limits access to confidential information and trade secrets through use of passwords on its computers, secured access to its facilities and other security measures that limit and control access to Plaintiff's confidential information and trade secrets. Id. ¶ 14. Importantly, sensitive documents are kept in secured locations. Plaintiff's computers may only be accessed by Plaintiff employees with proper passwords. Id.

Plaintiff does not freely share its confidential material or trade secrets with any entity or person outside of the company. Plaintiff requires all of its employees and consultants to sign agreements that include confidentiality and non-disclosure provisions that acknowledge its employees and consultants will receive confidential information during their employment. Confidentiality provisions define Plaintiff's proprietary and confidential material broadly, and prohibit its employees and consultants from disclosing such material to anyone outside of the company without Plaintiff's consent or otherwise misappropriating the company's information. These agreements, signed by Plaintiff's employees, establish a contractual duty to the company not to disclose, use or retain confidential information without Plaintiff's authorization. Id. ¶ 15.

Defendant was an employee of Plaintiff, in the position of a senior engineer, until employment was terminated on February 5, 2010. See, Declaration of Ron Van Dell ("Van Dell Decl."), ¶ 2; Complaint, Dkt. No. 16 ¶ 16. Defendant began his employment with Plaintiff on September 9, 2009. Id. ¶ 2. Defendant entered into an agreement with Plaintiff that contained provisions establishing a contractual duty to Plaintiff not to disclose, use or retain Plaintiff's confidential or proprietary information. See, Complaint, Dkt. No. 16 ¶¶ 15-16, 20; Van Dell Decl., ¶ 3. Upon termination of his employment, Defendant executed a Termination Certification verifying that he would continue to protect Plaintiff's trade secrets and that he had returned all of

1    its property. Defendant was not authorized to retain, use or disclose any of Plaintiff's confidential

2    materials, including trade secrets. See, Van Dell Decl., ¶ 3.

3            During his employment, Defendant had access to Plaintiff's trade secrets and confidential

4    information. Id., ¶ 4. In particular, during his employment, Defendant had access to the following

5    documents:

6    •   A PDF document entitled "SCH_820-00104-03.pdf" – being a schematic of "SolarBridge

7        Inverter Prototype Beta 2."

8    •   An Excel spreadsheet entitled "711-00018-03 (2).xls" – being a proprietary list of parts,

9        makers and descriptive details of parts used by SolarBridge in certain products and

10       development efforts.

11   •   A PDF document entitled "CEC Weighted Efficiency 091029.pdf" – being proprietary

12       details relating to "SolarBridge Inverter CEC Efficiency."

13   •   A PDF document entitled "Control_Topology_25Nov09.pdf" – being a variety of

14       proprietary topology and circuit diagrams describing SolarBridge's technology.

15   •   A PowerPoint document entitled "Control Design Review July 30 2009 v3 (2).ppt" – being

16       an extensive description of proprietary topology and circuit diagrams describing

17       SolarBridge's technology.

18           See, id., ¶ 4.

19           Defendant accessed Plaintiff's protected computers that stored confidential material and

20   trade secrets of SolarBridge. See, Complaint, Dkt. No. 16, ¶¶ 5, 17, 18. Defendant transferred

21   Plaintiff's trade secrets and confidential information to his personal computer(s), which was

22   maintained on such computer(s) after his employment with Plaintiff had ended. Id.

23           Defendant owns the email address tattel_49@yahoo.com associated with the alias "Mark

24   Tatley." Id. ¶ 4.  See, also Ramsey Decl. ¶ 4.   On July 13, 2010, Defendant, using the persona

25   "Mark Tatley," sent an email message, with the subject heading "Gift," from the email address

26   tattel_49@yahoo.com to one of Plaintiff's competitors. Id. ¶ 19; Van Dell Decl., ¶ 4-5, Ex. 1.

27   Attached to Defendant's email message were the five documents above, each of which is

28   maintained and protected as Plaintiff's confidential information, which is not publicly available. Id.

United States District Court
For the Northern District of California

4

1   These documents disclose some of Plaintiff's trade secrets and intellectual property – including

2   schematics of SolarBridge products and presentations of ongoing research and development of

3   future products. Id. Defendant's email was *not* authorized by Plaintiff. See, Complaint Dkt. No. 16,

4   ¶ 20 and 31-33.

5   **C. Factual Allegation relevant to Damages-Plaintiff's Attorney's Fees.**

6   Plaintiff's brief asserts that Defendant's conduct has caused it to incur losses, including

7   attorney's fees and costs necessary to prosecute this action and to investigate and mitigate the

8   injury caused by Defendant's conduct. Id. The declaration of Plaintiff's attorney, Gabriel M.

9   Ramsey, sets forth the calculations for attorney's fees in the amount of $56,989.98 and costs in the

10  amount of $9,573.35. See, Ramsey Decl. ¶ 2-3.

11  **II. DISCUSSION**

12  Default judgment is a two-step process under the Federal Rules of Civil Procedure.  First,

13  and pursuant Rule 55(a), when a "party against whom a judgment for relief is sought has failed to

14  defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."

15  Second, once the clerk has entered the party's default, the party seeking default judgment must

16  apply under Fed. R. Civ. P. 55(b)(2) to the court for default judgment.

17  Here, and given that Clerk of the Court has entered default against Defendant on November

18  14, 2011 Plaintiff now seeks entry of a default judgment and permanent injunction. See, Dkt. No.

19  Item No. 31.

20  **A. Jurisdiction and Service of Process in Default Judgment Context**

21  Courts have an affirmative duty to examine their own jurisdiction – both subject matter and

22  personal. In re Tuli, 172 F.3d 707, 712 (9th Cir.1999).

23  Plaintiff relies on the federal CFFA claim for the purposes of jurisdiction. While the CFAA

24  claim is not pursued in the Motion for Default Judgment, the claim still provides jurisdiction as the

25  allegation remains pled in Plaintiff's Complaint. The action also arises from Defendant's breaching

26  of California laws, which this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

27  Personal jurisdiction arises when a substantial part of the events or omissions, giving rise to

28  the claims pled, occurred in the jurisdiction. See, Gray & Co. v. Firstenberg Mach. Co., 913 F.2d

5

1 | 758, 760 (9th Cir.1990); <u>Church Bros., LLC v. Garden of Eden Produce, LLC</u>, No. 5:11–cv–04114

2 | 2012 WL 1155656 *2 (N.D.Cal. April 5, 2012.), and, <u>Tagged, Inc. v. Does 1 through 10</u>, No. C 09-

3 | 0171, 2010 WL 370331 *4, 2010 U.S. Dist. LEXIS 5428,*11 (N.D.Cal. Jan. 25, 2010) (holding

4 | jurisdiction over the defendants because the servers used by the plaintiff to maintain its website

5 | were located in San Francisco, California.)   Here, because the email message sent by Defendant

6 | was associated with the company, Yahoo, located in San Jose, California – the Court has personal

7 | jurisdiction over Defendant.

8 |         Additionally, the court must also assess whether Defendant was properly served with notice

9 | of this action.  <u>See</u>, generally, Fed. R. Civ. P., Rule 4, and <u>Tagged, Inc</u>, 2010 WL 370331*2, 2010

10 | U.S. Dist. LEXIS 5428,*11.[2]  Here, Defendant resides in Turkey.  Plaintiff has formally served

11 | Defendant its Complaint and related materials pursuant to the Hague Convention on Service

12 | Abroad.  Service was effected by an agent of the Ministry of Justice of Turkey, resulting in

13 | Defendant being personally served on April 25, 2011. <u>See</u>, Dkt. Item No. 26, Certificate of Service

14 | by SolarBridge Technologies, Inc. Such service comports with Fed. R. Civ. P.  4(f)( 1) and is

15 | adequate for the purposes of default judgment.[3]

16 | **B. Legal Standard**

17 |         The grant of default judgment is determined at the court's discretion. <u>O'Connor v. Nev.</u>, 27

18 | F.3d. 357, 364 (9th Cir. 1994). To determine whether  such discretion should be exercised, the

19 | Ninth Circuit has provided seven factors for consideration before a district court grants default

20 | judgment – including: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's

21 | substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action;

22 | (5) the possibility of dispute concerning material facts; (6) whether default was due to excusable

23 | neglect and; (7) the strong policy underlying the Federal Rules of Civil Procedure favoring

24 | decisions on the merits. <u>Eitel v. McCool</u>, 782 F.2d 1470, 1471–72 (9th Cir.1986). <u>See also</u>, <u>Church</u>

25 | <u>Bros</u>, 2012 WL 1155656*1-2.

---

[2] With respect to notice, a defendant is only entitled to notice before a hearing on a motion for default judgment if he has made a prior appearance in the action. FRCP 55(b)(2). Here, despite service of the Complaint and Summons, Defendant has made no appearance during the course of this action, and thus no notice was required.

[3] Plaintiff has also provided service through e-mail pursuant to Fed. R. Civ. P.  Rule 4(f)(3).

United States District Court
For the Northern District of California

When assessing these factors, all factual allegations in the complaint are taken as true, except those with regard to damages.  See, Televideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987).   In this case, application of each of the Eitel factors favors grant of default judgment and permanent injunction against Defendant.

**1. The possibility of prejudice to the plaintiff**

The first factor cuts in favor of Plaintiff because without remedy it will be left without any means to prevent Defendant from continued trade secret violations.  Defendant would be permitted to continue the alleged conduct with impunity and cause injury to Plaintiff.

**2.  The merits of plaintiff's substantive claim**

The Plaintiff's motion is predicated on several claims; all of which provide basis for the grant of default judgment.[4]

  **a.   Trade Secret Misappropriation, Cal. Civ. Code §§ 3426 et seq**

To establish a prima facie case for trade secret misappropriation, a plaintiff must demonstrate: (1) the plaintiff owned a trade secret, (2) the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means, and (3) the defendant's actions damaged the plaintiff's business. See, Cal. Civ. Code § 3426.1; Sargent Fletcher, Inc. v. Able Corp., 110 Cal. App. 4th 1658, 1665-66 (2003); Morlife, Inc. v. Perry, 56 Cal. App. 4th 1514, 1519 (1997).

With respect to the first element, a trade secret is defined as "a formula, pattern, compilation, program, device, method, technique, or process, that: (1) derives independent economic value…from not being generally known to the public; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."  See, Uniform Trade Secrets Act ("UTSA"), Cal. Civil Code §  3426(d).

Here, Plaintiff claims that Defendant obtained topology diagrams for Plaintiff's converter products that included, amongst other things, equations, diagrams and schematics associated with

**United States District Court**
For the Northern District of California

---

[4] The unfair competition claim under Bus. & Prof Code is predicated on the Cal. Civ. Code § 3426.

Case No. C 10-cv-03769-EJD
ORDER GRANTING DEFAULT JUDGMENT AND PERMANENT INJUNCTION

Plaintiff's prototypes.[5] See, Complaint, Dkt. No. 16, ¶¶ 11, 30. In particular, and during his

employment, Defendant had access to and obtained trade secrets – including:

- A PDF document entitled "SCH_820-00104-03.pdf" – being a schematic of "SolarBridge Inverter Prototype Beta 2."

- An Excel spreadsheet entitled "711-00018-03 (2).xls" – being a proprietary list of parts, makers and descriptive details of parts used by SolarBridge in certain products and development efforts.

- A PDF document entitled "CEC Weighted Efficiency 091029.pdf" – being proprietary details relating to "SolarBridge Inverter CEC Efficiency."

- A PDF document entitled "Control_Topology_25Nov09.pdf" – being a variety of proprietary topology and circuit diagrams describing SolarBridge's technology.

- A PowerPoint document entitled "Control Design Review July 30 2009 v3 (2).ppt" – being an extensive description of proprietary topology and circuit diagrams describing SolarBridge's technology.

As established in Van Dell's declaration and the Complaint, measures were taken to prevent

public access to these documents and, as such, they held economic value as trade secrets for the

purposes of the UTSA. Id. see, also Complaint, Dkt. No. 16, ¶¶ 11, 12-16, 31.

With respect the second element, Plaintiff must show that Defendant acquired, disclosed, or

used its trade secrets through improper means.[6] While it has been legally recognized that a former

---

[5] Plaintiff provides a shopping list of documents that Defendant obtained from SolarBridege. Nothing before the Court shows that these documents are not trade secrets – including: "topology diagrams for SolarBridge's converter products, showing the architecture and equations employed in the operation of those products; topology diagrams and schematics associated with SolarBridge prototype inverters, showing the architecture and equations employed in the operation of those prototypes; presentations outlining the development of SolarBridge's control system products, including topology diagrams illustrating the architecture of the converters SolarBridge is developing; equations employed in the operation of those prototypes; development techniques employed by SolarBridge; its analysis and test result for its developing products; tolerances for SolarBridge's developing products as revealed through its testing; error analysis data; data regarding the operation of those products under specific conditions; and future work necessary on its developing products; efficiency charts for SolarBridge's inverters; and confidential parts lists showing the quantity and manufacturer for parts used in SolarBridge's products, and other confidential intellectual property." See, Complaint, Dkt. No. 16, ¶¶ 11, 30.
[6] The USTA defines 'improper' as: "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means. Reverse engineering or independent derivation alone shall not be considered improper means." § 3426.1(a).

Case No. C 10-cv-03769-EJD
ORDER GRANTING DEFAULT JUDGMENT AND PERMANENT INJUNCTION

1  employee may "use knowledge, skill, and experience acquired in his former employment in

2  competition with a former employer, the former employee may not use confidential information or

3  trade secrets in doing so." Morlife, Inc., 56 Cal. App. 4th at 1519.

4       Plaintiff asserts – and the alleged facts support – that Defendant disclosed the

5  abovementioned trade secrets in contravention of non-disclosure provisions of Plaintiff's

6  employment agreements. See, Complaint, Dkt. No. 16. ¶¶ 18-22, 32. Specifically, Defendant sent

7  an email to "an employee of one of SolarBridge's competitors", which attached the documents

8  above without Plaintiff's consent. Van Dell Decl., ¶ 5. One of these documents – namely,

9  "SolarBridge Inverter Prototype Beta 2" – was expressly marked "Confidential". This only serves

10  to reinforce the sensitive nature of the document as a trade secret of SolarBridge.

11       Finally, and with respect to the third element, Defendant's misappropriation of Plaintiff's

12  trade secrets has caused damage to its reputation and diluted the value of its trade secrets.

13  Defendant's misappropriation of Plaintiff's trade secrets was willful and malicious, entitling

14  Plaintiff to an award of reasonable attorney's fees and costs. Id., ¶¶ 18-22, 33-36.

15      **b.  Unfair Competition, Cal. Bus. & Prof Code §§ 17200 _et seq_**

16       Plaintiff also asserts that Defendant has violated California's Bus. & Prof Code § 17200.

17  This claim covers a wide range of conduct and embraces "anything that can properly be called a

18  business practice and that, at the same time, is forbidden by law." Cel–Tech Comc'ns, Inc. v. L.A

19  Cellular Tel. 20 Cal.4th 163 (1999). In short, Section 17200 "borrows" violations from other laws

20  by making them independently actionable as unfair competition practices. Id.

21       Section 17200 defines unfair competition as "(1) any unlawful, unfair or fraudulent

22  business act or practice; (2) unfair, deceptive, or misleading advertising or (3) any act prohibited by

23  Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and

24  Professions Code." Importantly, misappropriation of trade secrets in violation of UTSA constitutes

25  unfair competition. See, Courtesy Temp.., Inc. v. Camacho, 222 Cal. App. 3d 1278, 1292 (1990).

26  In that case, the plaintiff's action, under Bus. & Prof Code § 17200, sought injunctive relief based

27  on piracy and deceit of former employees. The court held that the defendants' actions constituted

28

9

1   misappropriation of confidential information and granted injunctive relief pursuant to Bus. & Prof

2   Code § 17203.

3          Here, similarly, Defendant has engaged in unfair competition as prescribed by Section

4   17200. Defendant did so when he obtained confidential information from Plaintiff and disclosed

5   trade secrets to competitors.  Through Defendant's actions, he has undermined Plaintiff and caused

6   damage to its business. Id. ¶¶ 18-22, 32 and 44.  See also, Van Dell Decl., ¶ 4

7          Defendant's actions thus constitute unfair competition under California's Business and

8   Professions Code §17200. Id. ¶¶ 18-22, 32 and 39. Further, and as a direct and proximate result of

9   the Defendant's unfair competition in violation of the Section 17200 et seq, Plaintiff has suffered

10  and will continue to suffer irreparable harm unless Defendant is enjoined from disclosure of further

11  trade secrets of Plaintiff. This, as discussed later, provides the basis for the grant of the permanent

12  injunction.  Id. ¶ 41. See, generally Courtesy Temp. Serv, 222 Cal. App. 3d at 1292.   See also,

13  Bus. & Prof Code § 17203; Greenly v. Cooper, 77 Cal. App. 3d 382, 143 Cal.Rptr. 514 (1978),

14  See, also, In re High-Tech Emp. Antitrust Litig., No. 11–CV–02509, 2012 WL 1353057 *17, 2012

15  U.S. Dist. LEXIS 55302 *19 (N.D. Cal. Apr. 18, 2012).

16      **c.  Common Law Misappropriation and Unfair Competition**

17         Under the common law, a former employer has a right to enjoin acts of unfair competition

18  by an ex-employee in divulging or using trade secrets. See, Empire Steam Laundry v. Lozier 165

19  Cal. 95, 96-102 (1913); Greenly 77 Cal.App.3d at 391-392; Santa Monica Ice & Cold Storage. Co.

20  v. Rossier) 42 Cal.App.2d 467, 468-471 (1941); American Loan Corp. v. California Commercial

21  Corp. 211 Cal.App.2d 515, 521-523 (1963).

22         For reasons that substantially follow from the claims above, Defendant also falls afoul of

23  the common law action for unfair competition. Specifically, Plaintiff has developed trade secret

24  material and expended time and money developing same. See, Complaint, Dkt. No. 16, ¶¶ 9-16, 43.

25  Defendant has taken Plaintiff's trade secrets and disclosed such secrets to others without consent of

26  his former employer. Id. ¶ 41 and Van Dell Decl., ¶ 4.  As a consequence, Defendant's

27  unauthorized disclosure and use of the confidential information has harmed Plaintiff and

28  constitutes unfair competition. Id. ¶ 45.

### 3. The sufficiency of the complaint

Turning to the next factor, nothing in the Complaint suggests that Plaintiff has not pled factual allegations consistent with the appropriate standard held in Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (holding that a claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") See also, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (holding that the complaint must plead "enough facts to state a claim for relief that is plausible on its face."). Here, there are more than enough facts to state a claim(s) for the purposes of sufficiency of the Complaint, making this factor favorable for Plaintiff in support of its motion for default judgment.

### 4. The Sum of Money at Stake

Under this factor, the Court looks to the sum of money at stake between the parties. A large sum of money tends to cut against the grant of default judgment. See, Eitel 782 F.2d at 1472.  In that case, the fact that $2.9 million was at stake – when considered in light of the parties' dispute – supported the court's decision to *not* enter default judgment.

In this case, the sum of the money at stake is relatively small.  Plaintiff seeks $56,989.98 in attorney fees and costs of $9,573.35.   These amounts are far less than the amount sought in Eitel, and serves to sway this factor significantly towards Plaintiff's motion for default judgment.

### 5. The Possibility of Disputed Facts

In light of the recent Nosal decision, Plaintiff withdrew its claims under the CFAA and California's Penal Code §502(e)(2).  The claims were withdrawn only with respect to the Motion for Default Judgment. Had the Plaintiff pursued those claims, it would have been difficult to find that the operative facts were *indisputable* without further "factual development" as conceded in Plaintiff's brief. See, Supplemental Briefing, Dkt. No. 38. ¶ 3.

Nonetheless, with respect to the claims that remain for default judgment, the factual context is straightforward: Defendant was an employee of the Plaintiff with access to the same materials that were sent to SolarBridge's competitor from the email address "tattel_49@yahoo.com." It was revealed from account records, provided by Yahoo during the discovery, that this Yahoo account was Defendant's personal email account. Tellingly, and in telephone exchanges with Defendant,

11

United States District Court
For the Northern District of California

these facts were not denied. <u>See</u>, Ramsey Decl., ¶ 4. This undisputed factual context also lies at the core of all the remaining claims before the Court, which only points in favor of Plaintiff's motion for default judgment.

**6. Whether Default was Due to Excusable Neglect**

Defendant has failed to appear before this Court in any way during the course of these proceedings.  Even when communicated to via telephone with Plaintiff's counsel, there has been nothing to suggest that there has been technical error or excusable neglect on Defendant's behalf. <u>See</u>, Ramsey Decl., ¶ 4.  This conclusion is reinforced by the fact that Defendant was formally served pursuant to the Hague Convention on Service Abroad and has chosen not to respond to the Complaint, nor has there been any response by Defendant to the repeated notice over the course of the past eight months to resolve this matter. This factor cuts in favor of Plaintiff.

**7. Policy Underlying the Federal Rules of Civil Procedure favoring Decisions on the Merits.**

Although federal policy generally disfavors the entry of a default judgment, all of the other <u>Eitel</u> factors weigh in favor of default judgment.  It would be difficult for this factor to trump all the others, even in light of federal policy seeking that matters be determined on the merits.

In sum, because the <u>Eitel</u> factors are compelling and weigh heavily in favor of Plaintiff, the Court grants the motion for default judgment.

**C. Permanent Injunction**

Plaintiff seeks a permanent injunction against Defendant from further violations of California Civil Code §§ 3426 et seq and Business & Profession Code § 17200.  As addressed earlier, section 17203 allows a plaintiff to obtain injunctive relief or other equitable relief for any person who engages in unfair competition.  Here, Plaintiff has sufficiently pled facts with respect to the underlying claims.  Those pleadings establish that irreparable harm will result from further unauthorized disclosures by Defendant.  Accordingly, Plaintiff's request for permanent injunction is granted. <u>See</u>, Bus. & Prof Code § 17203; <u>In re High-Tech Employee Antitrust Litig.</u>, 2012 WL 1353057 *17, 2012 U.S. Dist. LEXIS 55302 *19.

### D. Attorney's fees and Costs

Plaintiff seeks to recover $56,989.98 in attorney fees and litigation costs of $9,573.35. As asserted in Plaintiff's brief, both attorney fees and costs are authorized under California Civil Code § 3426.4. See, also In re Lopez, 367 B.R. 99, 106 (9th Cir. 2007). Here, several facts support the award of attorney fees and costs. First, Plaintiff's request for reasonable fees has not been challenged throughout these proceedings, nor have such been questioned in telephonic correspondence between Defendant and Plaintiff. Second, Defendant's actions were intentional in so far that the email, containing trade secrets, was sent to a competitor of SolarBridge – hence demonstrating wilful and malicious conduct. The fact that the email was subject headed, "A Gift" only fortifies this conclusion. See, Van Dell Decl., ¶ 4-7. To support the relief sought, Plaintiff's counsel has filed a declaration describing the tasks they have performed in this action and the costs incurred. See, Ramsey Decl. Because the amount asked for by Plaintiff appears reasonable, the sum will be granted in its entirety.

### III.   ORDER

Based on the foregoing reasons, Plaintiff's motion for default judgment, request for attorney's fees/costs, and permanent injunction is granted based on the fact that Defendant has engaged in, and is likely to engage in, acts or practices that violate (1) California's Uniform Trade Secrets Act (Cal. Civ. Code § 3426); (2) the law of unfair competition (Cal. Bus. & Prof. Code § 17200); and (3) the common law of trade secret misappropriation and unfair competition.

Since this order represents a final resolution of all the issues in this case, judgment will be entered in favor of the Plaintiff and the Clerk will close this file, accordingly.

**IT IS SO ORDERED** as follows:

1. Plaintiff, SolarBridge's Motion for Default Judgment is granted.

2. Defendant, Isaac Ozkaynak is in default.

3. Plaintiff is awarded judgment against Defendant. It is hereby ordered and adjudged that Plaintiff has and shall recover from Defendant the sum of $56,989.98 in attorney's fees, together with costs in the sum of $9,573.35, for a total judgment of $66,563.33.

**United States District Court**
For the Northern District of California

1      4. Pursuant to Federal Rule of Civil Procedure 65(d), Defendant, his agents, assignees, and

2 successors-in-interest, and those in active concert or participation with him are permanently

3 enjoined from:

4      a. directly or indirectly using, for any purpose, any physical or electronic items or

5 documents belonging to Plaintiff, including all devices, records, data, notes, reports, proposals,

6 lists, correspondence, specifications, drawings, blueprints, sketches, laboratory notebooks, flow

7 charts, materials, equipment, other documents or property, or copies or reproductions of any

8 aforementioned items or documents, and any information contained, reflected, found or derived

9 from the foregoing (the foregoing is referred to as "Plaintiff Materials and Information");

10      b. directly or indirectly disclosing, for any purpose, any Plaintiff Materials and Information

11 to any third party, including but not limited to any current, future, actual or potential competitor to

12 Plaintiff;

13      c. directly or indirectly accessing, for any purpose, any SolarBridge Materials and

14 Information, including not limited through any physical or electronic means;

15      d. directly or indirectly selling, offering for sale, conveying, transferring, developing,

16 designing, manufacturing or otherwise commercializing or profiting from any SolarBridge

17 Materials and Information;

18      e. directly or indirectly using, disclosing or accessing any information, including any

19 SolarBridge Materials and Information, in any manner inconsistent with or in breach of the

20 September 9, 2009 Confidential Information and Invention Assignment Agreement between

21 Ozkaynak and SolarBridge;

22      f. directly or indirectly using, disclosing or accessing any information, including any

23 SolarBridge Materials and Information, in any manner inconsistent with or in breach of the

24 February 5, 2010 Termination Certification between Ozkaynak and SolarBridge;

25      g. directly or indirectly using, disclosing or accessing any information in any manner that

26 violates any intellectual property rights of Plaintiff, violates any state or federal law governing use,

27 disclosure or access of any SolarBridge Materials or Information, or otherwise violates any right or

28 privilege of Plaintiff.

Case No. C 10-cv-03769-EJD
ORDER GRANTING DEFAULT JUDGMENT AND PERMANENT INJUNCTION

5. Defendant shall return and transfer to SolarBridge all SolarBridge Materials and Information.

6. Defendant take all steps to ensure that no SolarBridge Materials and Information remain in his possession, custody or control and Defendant shall take all steps to confirm the return to Plaintiff of all SolarBridge Materials and Information. Ozkaynak shall certify in writing to Plaintiff that all such steps have been taken and that all SolarBridge Materials and Information have been returned and transferred to Plaintiff.

7. This Court shall retain jurisdiction over any and all issues arising from or related to the enforcement of this Permanent Injunction, the implementation of this Order or the interpretation of this Order.

8. Defendant shall provide a copy of this Permanent Injunction to each employee, agent, contractor or affiliate acting on Defendant's behalf and any third party, who has or may have actually or potentially had access to, used or disclosed SolarBridge Materials and Information.

Dated: June 12, 2012



EDWARD J. DAVILA
United States District Judge

Case No. C 10-cv-03769-EJD
ORDER GRANTING DEFAULT JUDGMENT AND PERMANENT INJUNCTION

United States District Court
For the Northern District of California